**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
COLUMBUS DIVISION
CASE NO. _____**

**AMY KOPCHAK**                                                                                             **PLAINTIFF**

**V.**

**CHARTER COMMUNICATIONS, LLC**                                                   **DEFENDANT**

**COMPLAINT WITH JURY DEMAND**

Comes now the Plaintiff, Amy Kopchak, by and through counsel, and for her Complaint against the Defendant states as follows:

**PRELIMINARY STATEMENT**

1. This is a damages action arising under 42 U.S.C. § 12101, *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), as amended, and supplemental state law claims against the Defendant for disability discrimination (disparate treatment), failure to accommodate, and retaliation stemming from events occurring approximately between April OF 2020 and March 19, 2021, the date the Plaintiff's employment was illegally terminated by the Defendant.

**PARTIES AND JURISDICTION**

Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

2. The Plaintiff, Amy Kopchak, was at all times herein a resident of Columbus, Franklin County, Ohio. Prior to her termination from employment with Defendant, she was employed by the Defendant as a Customer Service Internet/Voice Representative working at Defendant's call center in Columbus, Ohio.

3. The Defendant, Charter Communications, LLC, is an Ohio Foreign Limited Liability Company, organized under the laws of the State of Delaware, and operating a communications business including at a location in Columbus, Franklin County, Ohio.

4. On December 14, 2020 the Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against the Defendant, Agency Charge No. 532-2020-02610.

5. On April 22, 2021 the Plaintiff filed a second Charge of Discrimination with the EEOC against Defendant, Agency Charge No. 532-2021-00761.

6. The EEOC issued the Plaintiff a Right-to-Sue letters in both matters and both were received by the Plaintiff on November 28, 2022. The Plaintiff has exhausted her administrative remedies.

7. Jurisdiction is conferred on this Court under 42 U.S.C. § 12117 and 42 U.S.C. § 2000e-5.

8. Jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. § 1367, which provides for supplemental jurisdiction over state law claims which are so related to the federal law claims that they form one case or controversy for Article III purposes.

9. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

10. During her employment with the Defendant, the Plaintiff suffered from a crippling respiratory condition which produced severe allergic reactions and migraine-level headaches as the result of exposure to items commonly encountered such as perfume, cologne,

air freshener, cigarette smoke, candle fragrance, smoke, vape smoke, cleaning products, mold, and pollen. She was hospitalized and/or received emergency medical care on multiple occasions as a result of the allergic reactions and headaches. The Plaintiff was under consistent care with multiple medical professions to combat her condition during her employment with the Defendant. As a result of her condition, and the resulting physical and psychological impairment, the Plaintiff was significantly limited in her ability to breath, concentrate, and work.

11. While suffering from this debilitating condition, the Plaintiff was employed with Defendant at Defendant's work site located in Columbus, Franklin County, Ohio as a Customer Service Internet/Voice Representative. Her job entailed talking with customers of the Defendant concerning issues with the services they were provided by Defendant.

12. Upon information and belief, at all relevant times herein, the Defendant employed more than 15 employees for each working day in each of 20 or more calendar weeks in the current or preceding year of 2021 and otherwise meets the definition of an "employer" for purposes of the ADA and the Ohio Civil Rights Act.

13. In approximately April of 2020 and continuing through December of 2020, as a result of her medical condition, the Plaintiff requested and received several leaves of absence from the Defendant. On her doctor's advice and with her doctor's support, the Plaintiff made multiple requests to work remotely from home as an accommodation. Her requests were denied.

14. When the COVID-19 pandemic occurred, Defendant allowed some of its employees similarly situated to the Plaintiff to work remotely from home. Not aware that other similarly situated employees were allowed to work remotely home, the Plaintiff requested an

accommodation from the Defendant to work remotely from home on several occasions. These requests were denied by the Defendant.

15. On or about November 18, 2020, the Plaintiff became aware that similarly situated employees of the Defendant were granted permission to work remotely from home. Subsequently, the Plaintiff once again requested an accommodation from Defendant to work remotely from home because of her disability. Defendant denied this request.

16. On December 14, 2020, the Plaintiff filed a charge of discrimination with the EEOC alleging disability discrimination and failure to accommodate as a result of Defendant's refusal to treat her the same as her similarly situated co-workers because of her disability. Following the filing of this charge, the Defendant relented and allowed the Plaintiff to work remotely from home, but informed the Plaintiff she would be required to return to work to Defendant's Columbus work site when the rest of her co-workers returned to work.

17. On December 18, 2020, the Plaintiff received an email from Defendant's employee Shawn Shepard, in which he informed the Plaintiff:

> "Hi, After getting to set down with leadership here is their return to work plan for you. Due to the time away from the business nine plus months with multiple changes to the business they are requiring you to complete new hire training with the next class starting Monday 1/4/21 (sic) 5 weeks of training 9am to 5;30pm Monday thru Friday which you will complete remotely via WebEx. You can pick up your EQ Sat. 1/2/21 @1pm Onsite along with getting your VPN and passwords set up that day. Neal and leadership will have your access opened due to your time away that can take a few days to be fully back in the system they will have that process completed ahead of time. After the 5 weeks training course you will return to your 6:30am to 3 pm schedule. Leadership would be open to a temp schedule change to third

shift with Shift Differential if you are interested after completing training. Leadership is excited to get you retrained and back to work."

18.Following this email from Defendant's employee, Defendant informed Plaintiff the accommodation to complete the retraining portion of her return-to-work plan remotely would not be honored and that she would be required to attend the retraining (which was taught by the instructor remotely) at Defendant's Columbus facility. If she was not able to attend onsite, several employees of the Defendant attempted to coerce the Plaintiff to resign her employment.

19.The Plaintiff attempted to attend the training in January of 2021, but had another severe allergic reaction inside Defendant's facility approximately several days into her training that resulted in emergency medical care.

20.The Plaintiff again requested to retrain remotely from home as an accommodation. This request was denied.

21.Instead, Defendant indicated it would allow the Plaintiff to have her own room, but she would not be allowed to use any respiratory protection equipment if it would "interfere with [her] ability to communicate and participate in training, or interfere with essential job functions." Defendant required the Plaintiff to return onsite on February 5, 2021 to complete training.

22.On or about February 22, 2021 the Plaintiff reached out in desperation to the multiple high-level management employees of the Defendant to discuss these issues, and further informed these individuals of the harassment and retaliation she was experiencing as a result of her accommodation requests.

23. Instead of addressing the Plaintiff's concerns, Defendant terminated the Plaintiff's employment effective March 19, 2021.

24. At all times herein, the Plaintiff was qualified for her position with the Defendant. Furthermore, had the Defendant accommodated the Plaintiff as requested she would have been able to complete the required retraining and return to work.

25. If not for the Plaintiff's disability, her request for reasonable accommodation, and filing a charge of discrimination with the EEOC, the Defendant would not have terminated the Plaintiff's employment.

26. Upon information and belief, the Plaintiff was eventually replaced by someone who did not suffer from a disability.

## COUNT I

### (DISABILITY DISCRIMINATION UNDER THE ADA AND OHIO CIVIL RIGHTS ACT – DISPARATE TREATMENT)

Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

27. The acts of the Defendant, as previously described, constitute disability discrimination in violation of the ADA and the Ohio Civil Rights Act. The Plaintiff was disabled, was qualified for her position, Defendant knew about the Plaintiff's disability, and terminated her employment because of her disability on March 19, 2021. Upon information and belief, the Plaintiff was replaced by a nondisabled individual.

28. As a proximate result of the Defendant's illegal discrimination, the Plaintiff has suffered and continues to suffer irreparable harm, including but not limited to loss of income, benefits, and other valuable job rights. Plaintiff has suffered from and continues to suffer from emotional distress, humiliation and embarrassment, all for which she should be compensated.

## COUNT II

### (FAILURE TO ACCOMMODATE
### UNDER THE ADA AND OHIO CIVIL RIGHTS ACT)

Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

29. The Plaintiff's multiple requests to complete her retraining and to complete her essential job functions remotely was a reasonable accommodation, was specific enough request to put the Defendant on notice of the need for a reasonable accommodation, and would have allowed her to perform the essential functions of her job.

30. The Defendant refused to even engage the Plaintiff in the interactive process to discuss the reasonableness of the accommodation, and instead outright denied the request for the reasonable accommodation and terminated her employment.

31. As a proximate result of the Defendant's illegal conduct, the Plaintiff has suffered and continues to suffer irreparable harm, including but not limited to loss of income, benefits, and other valuable job rights. Plaintiff has suffered from and continues to suffer from emotional distress, humiliation and embarrassment, all for which she should be compensated.

## COUNT II

### (RETALIATION)

Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

32. The allegations raised in the Complaint demonstrate the Plaintiff both opposed a practice deemed unlawful under the ADA and Ohio Civil Rights Act, and participated in an administrative action with the EEOC prior to her termination from employment.

33.	Defendant was aware of the Plaintiff's opposition and participation in the EEOC charge.

34.	As a direct and proximate result of Plaintiff's opposition to Defendant's illegal conduct, and her participation in the EEOC administrative case, the Plaintiff's employment was terminated by Defendant.

35.	As a direct and proximate result of Defendant's conduct, the Plaintiff suffered and continues to suffer irreparable harm, including but not limited to loss of income, benefits, and other valuable job rights. Plaintiff has suffered from and continues to suffer from emotional distress, humiliation and embarrassment, all for which she should be compensated.

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

A.	For all back pay, pre-judgment interest, fringe benefits, and any other appropriate relief necessary to make Plaintiff whole, including compensatory damages for emotional distress, humiliation and embarrassment;

B.	For reinstatement to her former position with Defendant, or front pay in lieu of reinstatement;

C.	For an award of punitive damages pursuant to 42 U.S.C. § 1981(a);

D.	For Plaintiff's costs herein expended, including reasonable attorney's fees;

E.	For a trial by jury on all issues so triable; and

F.	For any and all other relief to which Plaintiff appears entitled.

RESPECTFULLY SUBMITTED,

ROUSH & STILZ, P.S.C.

/s/ W. Kash Stilz, Jr.
W. KASH STILZ, JR.
19 West Eleventh Street
Covington, Kentucky 41011-3003
Telephone: (859) 291-8400
Email: kash@roushandstilzlaw.com
ATTORNEYS FOR PLAINTIFF